IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br>**BUDEPRION XL MARKETING AND**<br>**SALES PRACTICES LITIGATION**<br>(MDL 2107)<br><br>THIS DOCUMENT APPLIES TO:<br>ALL ACTIONS | CLASS ACTION<br><br>2:09-CV-2811 (Lead Case) |

## OBJECTIONS REGARDING PROPOSED SETTLEMENT

To The Honorable District Judge:

Comes Now Jaquelyn Anderson, ("Objector"), and files these Objections to the Proposed Settlement, Objections to Class Certification, Objections to Attorneys' Fees, Objections to Incentive Awards, Notice of Intent to Appear, and Request to Speak at the Hearing, and would show as follows:

## I.  Objector

Objector is a member of the settlement class, as shown by Objector's attached declaration, which is incorporated herein by reference.  Objector, through counsel, intends to appear at the hearing.[1]  Objector requests that Objector's counsel be allowed to appear at the final approval hearing to talk about these objections and to otherwise participate in the final approval hearing.

## II. Objections to Class Certification

Objector objects to class certification for the following reasons.

### A.  Certification under Rule (b)(2) is not permitted in this case

As the Third Circuit and Supreme Court have held:

> Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."

---

[1]  The undersigned counsel is not a member of this court's bar.  However, under the Rules of Proc. of the Judicial Panel on Multidistrict Litigation Rule 2.1 (c) he may appear in this MDL case nevertheless because he is a member of the bar of at least one district court of the United States, and because "Parties are not required to obtain local counsel."  *See*, *In re Farmers Ins. Exchange Claims Representatives Overtime Pay Litigation*. 2009 WL 3834034, 1 (D. Or. 2009).

1

*Gates v. Rohm & Haas Co.*, 655 F.3d 255, 264 (3d Cir. 2011), quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011). Plaintiffs in this case sought individualized monetary damages (restitution), and the settlement releases all claims for those individualized damages (other than for personal injury). Thus, the court may not certify a Rule 23 (b)(2) class.

Not only is certification not permitted by the rules, but the attempt to certify the class under Rule 23(b)(2) in this case is a hot button indicator of an unfair settlement. The Federal Judicial Center has found that one "hot button indicator" of an unfair settlement is when the parties seek to certify an injunctive class under Rule 23 (b)(2) to avoid the need to provide individual notice and opt out rights to class members:

> Might an emphasis on injunctive relief and proposed certification of a Rule 23(b)(2) class amount to a tactical move to avoid more stringent certification requirements and opt-out rights associated with a damages class under Rule 23(b)(3)?

Barbara J. Rothstein & Thomas E. Willging, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, SECOND EDITION, (Federal Judicial Center 2009), at 20 (identifying this as a "hot button indicator," which the Center defines at p. 15 as a term of "potential unfairness on [its] face.").

Members of a Rule 23(b)(3) damages class are entitled to individual notice and an opportunity to opt out of the class. MANUAL FOR COMPLEX LITIGATION 4th, § 21.221. Regarding notice, Rule 23 provides:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.

FED. R. CIV. P. 23(c)(2)(B).

Conversely, members of a Rule 23 (b)(2) injunctive class are not entitled to notice or an opt-out opportunity when the sole relief requested is injunctive or declaratory relief. MANUAL FOR COMPLEX LITIGATION 4th, § 21.221; *see also*, FED. R. CIV. P. 23(c)(2)(A)("For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class.").

The Supreme Court frequently emphasizes the importance of individual notice and opt out rights when claims seek money judgments. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 847-48 (1999); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985). The Court has demonstrated growing concern regarding the certification of Rule 23 (b)(2) classes when monetary damages are implicated. *See Ortiz*, 527 U.S. at 844-48; *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 (1994). In fact, the Supreme Court has stated that there is "at least a substantial possibility" that actions seeking monetary damages are certifiable only under (b)(3), which provides class members notice and the right to opt-out. *Ticor Title*, 511 U.S. at 121.

2

More recently, the Supreme Court held that individualized damages claims, like this one that seeks different amounts of restitution for each class member, may not be certified under Rule 23 (b)(2):

> Our opinion in *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121, 114 S.Ct. 1359, 128 L.Ed.2d 33 (1994) (*per curiam*) expressed serious doubt about whether claims for monetary relief may be certified under [Rule 23(b)(2)]. We now hold that they may not, at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief. ... [The rule] does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011).   In this case the restitution damages would not be incidental to the injunctive relief, so certification under Rule 23(b)(2) is not proper.  As the Third Circuit has held:

> Rule 23(b)(2), in contrast to (b)(3), "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."

*Gates v. Rohm & Haas Co.*, 655 F.3d 255, 262 (3rd Cir. 2011)(quoting *Wal-Mart Stores, Inc. v. Dukes*).  Unquestionably the damages/restitution to each class member here would be individualized because they all paid different amounts so their restitution damages would all be different.  Thus, the court may not certify the class under Rule 23 (b)(2).

This case implicated monetary damages.  The Complaint sought individualized monetary damages:

- "This is a national FRCP 23(b)(2) class action for injunctive and other equitable *and statutory relief, including restitution*."  (p. 1)
- While the only monetary relief available under the UCL is restitution and no provision for attorney fees, the CLRA allows for *restitution, damages*, punitive damages, statutory damages and attorney fees."  (p. 22-23)
- "equitable restitution is appropriate" (p. 24)
- "Members of the Class are seeking equitable relief in the form of an injunction and restitution (*recovery for reimbursement of funds expended to purchase the Impax Product*), as expressly provided for by the UCL and the CLRA." (p. 27)
- "Members of the Classes have sustained *damages* as a direct result of the wrongful conduct described herein by purchasing a product that they would not have purchased but for Defendants wrongful conduct." (p. 27)
- "Plaintiffs requests [sic] that this Court enter such orders or judgments as may be necessary to restore any person in interest any *money* which may have been acquired by means of the above-referenced unfair and deceptive practices as provided in California Business and Professions Code section 17203, and for such other relief as set forth below." (p. 34)

- "Plaintiffs and the CLRA Subclass Class have been damaged and *seek restitution of all monies paid*, or some portion of all monies paid." (p. 34-35)
- Requested relief includes: "Ordering that Defendants be required to make restitution to each Plaintiff and Class Member of *any and all money* or property paid for the purchase of the Impax Product." (p. 36)

Doc. 22 (emphasis added).  The Settlement Agreement waives all monetary damages (other than for personal injury), including monetary damages for violations of the statutes cited in the Complaint. Settlement Agreement p. 6-7.

In short, a class action like this one that seeks individualized monetary damages may not be certified under Rule 23(b)(2).  The parties may not avoid that rule by simply eliminating class members' rights to individualized damages.  The court, therefore, should deny the motion to certify the settlement class.

## B.  The class representatives are not adequate

Rule 23 and due process permit class certification only when the representative parties will fairly and adequately protect the interests of the class.  FED. R. CIV. P. 23 (a)(4)(permitting certification "only if … the representative parties will fairly and adequately protect the interests of the class"); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)("the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members").  The MANUAL FOR COMPLEX LITIGATION 4th explains that the requirement means that the class representative and Class Counsel must represent the interests of *all* members of the class, which includes their interests vis-à-vis each other:

> Divergent interests must be taken into account and fairly accommodated before the parties negotiate a final settlement. Consider whether the counsel who have negotiated the settlement have fairly represented the interests of *all* class members.

MANUAL FOR COMPLEX LITIGATION 4th § 21.612, p. 314 (emphasis added).

The MANUAL FOR COMPLEX LITIGATION also says that if significant differences in interests exist between different groups within the class, the certification must create subclasses, with separate representatives and class counsel for each subclass.  MANUAL FOR COMPLEX LITIGATION 4th, §21.23, p. 272.  The Supreme Court addressed the adequacy requirement in *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), where it mandated separate class representatives *and counsel* for subgroups within the class, even in the settlement context:

> The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected.  Although the named parties alleged a range of complaints, each served generally as representative for the whole,

4

not for a separate constituency.    In another asbestos class action, the
Second Circuit spoke precisely to this point: "[W]here differences among
members of a class are such that subclasses must be established, we know
of no authority that permits a court to approve a settlement without
creating subclasses on the basis of consents by members of a unitary class,
some of whom happen to be members of the distinct subgroups.    The
class representatives may well have thought that the Settlement serves the
aggregate interests of the entire class.    But the adversity among subgroups
requires that the members of each subgroup cannot be bound to a
settlement except by consents given by those who understand that their
role is to represent solely the members of their respective subgroups."   In
re Joint Eastern and Southern Dist. Asbestos Litigation, 982 F.2d 721,
742-743 (1992), modified on reh'g sub nom.   In re Findley, 993 F.2d 7
(1993).

*Amchem Prods., Inc. v. Windsor,* 521 U.S. at 742.  The Supreme Court reiterated this rule
in *Ortiz*:

> [I]t is obvious after Amchem that a class divided between holders of
> present and future claims (some of the latter involving no physical injury
> and attributable to claimants not yet born) requires division into
> homogeneous subclasses under Rule 23(c)(4)(B), with separate
> representation to eliminate conflicting interests of counsel. See *Amchem*,
> 521 U.S., at 627, 117 S.Ct. 2231 (class settlements must provide
> "structural assurance of fair and adequate representation for the diverse
> groups and individuals affected"); cf. 5 J. Moore, T. Chorvat, D. Feinberg,
> R. Marmer, & J. Solovy, Moore's Federal Practice § 23.25[5][e], p. 23-149
> (3d ed. 1998) (an attorney who represents another class against the same
> defendant may not serve as class counsel). FN31
>
> FN31.   ... In Amchem, we concentrated on the adequacy of named
> plaintiffs, but we recognized that the adequacy of representation enquiry is
> also concerned with the "competency and conflicts of class counsel." Id.,
> at 626, n. 20, 117 S.Ct. 2231 ... ; see also 5 Moore's Federal Practice §
> 23.25[3][a] (adequacy of representation concerns named plaintiff and class
> counsel).

*Ortiz*, 527 U.S. at 856.

Separate class representatives must be appointed, even in a settlement class, when the
laws of the states differ regarding the underlying claim.  *Smith v. Sprint Communications
Co.,* 387 F.3d 612, 614-15 (7th Cir.2004); *Georgine v. Amchem Prods., Inc.,* 83 F.3d 610,
627 (3d Cir.1996) *aff'd,* 521 U.S. 591 (1997).  As the Supreme Court has said, settlement
is not a cure-all:

> [The] other specifications of [Rule 23]-those designed to protect absentees
> by blocking unwarranted or overbroad class definitions-demand undiluted,
> even heightened, attention in the settlement context.

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997). These requirements include
the requirement that the class representatives' claims be typical of those of the class and
that the representatives will adequately protect the class's interests. FED. R. CIV. P.
23(a)(3), (4).

The underlying claims in this case are based on state law. Thus, separate class
representatives and counsel should have been appointed for states with dissimilar laws for
the underlying claims. The settlement class here does not satisfy the adequacy or
predominance requirements of Rule 23.

### C. The class representatives were inadequate because they were disarmed

If the underlying *litigation* class cannot be certified, then the class representatives cannot
adequately represent the interests of a settlement class:

> The nationwide class plaintiffs thus entered negotiations in what the
> *Amchem* court describes as a "disarmed" state, unable to "use the threat of
> litigation to press for a better offer," *Amchem*, 521 U.S. at 621, 117 S.Ct.
> 2231-not a good position from which to represent the interests of parties
> that do wield such a threat.

*Smith v. Sprint Communications Co.,* 387 F.3d 612, 614 (7th Cir.2004). The
representative parties here were disarmed and, therefore, could not adequately represent
the interests of the class.

Plaintiffs themselves admit they were disarmed. First, as shown by their complaint
seeking only Rule 23 (b)(2) certification, they knew that they could not obtain Rule
23(b)(3) certification. Then, after the Supreme Court's decision in *Walmart*, it became
clear that Plaintiffs could not certify a Rule 23(b)(2) class. Because the class
representatives were disarmed, they could not be adequate representatives for the class, as
required by Rule 23 (a)(4). Thus, the court should not certify the settlement class.

### D. Improper notice

The notice failed to disclose (1) the amount of attorneys' fees that class counsel would
request or (2) the amount of the requested incentive awards. Rule 23 provides:

> Notice of the motion [for attorneys' fees] must be served on all parties
> and, for motions by class counsel, directed to class members in a
> reasonable manner.

Fed. R. Civ. P. 23 (h)(1). At a minimum class counsel must disclose the amount of fees
they will be requesting in the class notice:

> In cases in which settlement approval is contemplated under Rule 23(e), notice of class counsel's fee motion should be combined with notice of the proposed settlement, and the provision regarding notice to the class is parallel to the requirements for notice under Rule 23(e).

Fed. R. Civ. P. 23(h)(1) committee note.  As the Manual explains:

> If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses, ***both amounts must be disclosed to the class***.

MANUAL FOR COMPLEX LITIGATION 4th § 21.7, p. 335(emphasis added).

The notice here failed to identify the amount of either the requested fees or the incentive awards.  As a result, notice was defective and the court should not certify the class.

### E.  The settling parties have not met their burden of proof

The settling parties bear the burden of proof that all Rule 23 (a) requirements have been met, as well as one of the subdivisions of Rule 23 (b).  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  The settling parties have not met their burden of proof.


### III. Objections to the Settlement

The underlying claim was for millions of dollars of restitution damages; under the settlement class members do not receive a penny.  Not only do class counsel claim that is fair, reasonable, and adequate, they incredulously call this an "excellent result" for the class.  That is, they obtained an embarrassing 0% recovery on the restitution claim, and they call the results "excellent."  The result is excellent for the Defendants, who obtain a complete release on the restitution damages claim.  The result is excellent for the named Plaintiffs who receive huge cash awards that greatly exceed their restitution damages.  The result is excellent for class counsel who receive a whopping $4.5 million.  But the result for unnamed class members is as far from excellent as is imaginable.

A district court may approve a settlement only if it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(1)(C).  Settlements that take place prior to formal class certification, as was the case here, require a higher standard of fairness:

> Several circuits have held that settlement approval that takes place prior to formal class certification requires a higher standard of fairness. The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e). This is the position adopted by the Third Circuit in *GM Pick-Up Litig.*, 55 F.3d at 805 ("We affirm the need for courts to be even more scrupulous than usual

7

in approving settlements where no class has yet been formally certified."); the Second Circuit in *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1982) ("district judges who decide to employ such a procedure are bound to scrutinize the fairness of the settlement agreement with even more than the usual care"); and the Seventh Circuit in *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust,* 834 F.2d 677, 681 (7th Cir.1987) ("*Simer* and *Weinberger* emphasize ... that when class certification is deferred, a more careful scrutiny of the fairness of the settlement is required. We agree...."). *See also Manual for Complex Litigation* § 30.45 (3rd. ed. 1995) ("Approval under Rule 23(e) of settlements involving settlement classes ... requires closer judicial scrutiny than approval of settlements where class certification has been litigated.").

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998).  The Third Circuit agrees:

> We ask district courts to apply an even more rigorous, "heightened standard" in cases "where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously."  We have explained that this "heightened standard is designed to ensure that class counsel has demonstrated sustained advocacy throughout the course of the proceedings and has protected the interests of all class members."

*In re Pet Food Products Liability Litigation*, 629 F.3d 333, 350 (3rd Cir. 2010) (citations omitted).

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement, for the following reasons.

### A.  The Settlement is presumptively unfair

The proposed settlement provides no monetary benefit to the unnamed class members, but a "clear sailing" agreement regarding class counsels' fees.  This too is a "hot button indicator" of an unfair settlement:

> The addition of a "clear sailing" agreement (i.e., a stipulation that attorney fees based on the inflated settlement figure will not be contested) to an agreement with a reversion clause adds decibels to the alarms set off by the reversion clause. Some courts treat the combination as creating a presumption of unfairness.

Barbara J. Rothstein & Thomas E. Willging, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, SECOND EDITION, (Federal Judicial Center 2009), at 17-18. If a settlement with *the possibility* of receiving compensation plus a clear sailing fee provision adds decibels to the alarms, a settlement with *no money at all* to class members plus a clear sailing provision should be deafening.

8

**B.  No relief for class members who ceased using the product**

The Settlement provides no relief at all to class members, like Objector, who have ceased using the product.  There is no monetary recovery for this subgroup.  And since they no longer use the product, the injunctive relief does not benefit them.

A district court abuses its discretion if it approves a class action settlement that does not provide adequate consideration for the release of the class member claims:

> Under Rule 23(e), trial judges bear the important responsibility of protecting absent class members, "which is executed by the court's assuring that the settlement represents adequate compensation for the release of the class claims."

*In re Pet Food Products Liability Litigation*, 629 F.3d 333, 349 (3rd Cir. 2010).  For class members who no longer use the product, there is absolutely no compensation for the release of their restitution claims.  Thus, as a matter of law, the settlement is not fair, reasonable, or adequate.  The court should disapprove the settlement.

**C.  No monetary relief for releasing past damages claims**

For all class members, the Settlement wholly fails to provide any compensation for the past damages, the restitution sought in the complaint.  In the Class Action Fairness Act of 2005, (CAFA), Congress highlighted the very abuse that this settlement presents:

> Congress finds the following: …
>
> **(3)** Class members often receive little or no benefit from class actions, and are sometimes harmed, such as where--
>
>> **(A)** counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value.

Pub.L. 109-2, § 2, Feb. 18, 2005, 119 Stat. 4.  Similarly, the Federal Judiciary Center's MANUAL FOR COMPLEX LITIGATION 4th, found:

> There are a number of recurring potential abuses in class action litigation that judges should be wary of as they review proposed settlements:  … releasing claims of parties who received no compensation in the settlement … .

*Id.* § 21.61, p 310-311.  The settlement here provides a benefit to Defendant –a release of all class member claims.   The settlement provides a benefit to Class Counsel – a whopping $4.5 million.  The settlement even provides a huge windfall to the named Plaintiffs of $10,000 or $5,000.  Yet, the class members receive no compensation as a result of the settlement, but nonetheless lose their monetary claims against Defendant.  That is not fair, reasonable, or adequate as a matter of law.  The Seventh Circuit aptly described what appears to be the case in this case:

> Would it be too cynical to speculate that what may be going on here is that class counsel wanted a settlement that would give them a generous fee and [the Defendant] wanted a settlement that would extinguish 1.4 million claims against it at no cost to itself? The settlement that the district judge approved sold these 1.4 million claimants down the river.

*Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004).

The Federal Judicial Center has identified yet another aspect of this settlement as a "hot button indicator" of an unfair settlement:

> At times parties have attempted to release a damages remedy without making any correlative payment to class members … .

Barbara J. Rothstein & Thomas E. Willging, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, SECOND EDITION, (Federal Judicial Center 2009), at 20. A settlement where all of the monetary relief Defendants were willing to pay goes to class counsel and the named Plaintiffs, with no money to the class, should cause courts serious concern. This case is even worse than the coupon settlements that Congress was concerned about in CAFA. In a coupon settlement class members at least have the option of using the coupon and receiving some monetary benefit. Here the settling parties ensured that 100% of the money Defendants were willing to pay to end this litigation would go to the class counsel and the named Plaintiffs instead of the class members.

Courts routinely reject settlements that fail to provide compensation for the release of class members' monetary claims. For instance, in *Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007), the Plaintiffs had sought both injunctive and monetary relief. *Id.* at 380 ("Acosta sought actual damages … and an injunction."). Like here, the proposed settlement provided injunctive relief. *Id.* at 382. It also released all equitable and monetary claims, like here. *Id.* at 383. While it provided for economic relief to some class members, the court there focused on the fact that most class members would lose their damages claims for no compensation:

> [O]ver two-thirds of the Settlement Class, and up to 10 million class members, will be completely ineligible for any economic relief under the Settlement. In order to avoid having their rights to recover under the FCRA extinguished in exchange for zero economic relief, the Settlement requires these class members to affirmatively opt out lest their claims be permanently relinquished under the Settlement's sweeping and indiscriminate release provisions. Moreover, those class members ineligible for economic relief are precisely those who are least likely to receive notice of the Settlement because the Settlement denies them its most effective notice mechanism, that of Mailed Notice.

*Id.* at 388.

The *Acosta* court rejected the settlement in that case, despite the injunctive relief, for the same reasons this Court should reject the settlement in this case. In fact, the settlement

here is even more unfair, unreasonable, and inadequate because (1) class members lacked the right to opt out, and (2) *no* class members (other than the named Plaintiffs) receive any economic recovery.   As the *Acosta* court held, the injunctive relief does not compensate for the release of the economic damage claims for past statutory violations:

> The wholesale sacrifice of those class members [who receive no economic benefits] is especially egregious because as to these individuals "only damages matter, yet all the settlement does for (to?) them is cut them off at the knees. They gain nothing, yet lose the right to the benefits of aggregation in a class." *Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 882 (7th Cir.2000).

*Id.* at 388.  Just as the injunctive relief for future violations was not sufficient to support the waiver of past damages in *Acosta*, the injunctive relief for future violations in this case does not support the waiver of statutory liquidated damages here.

The Seventh Circuit in *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277 (7th Cir. 2002) also rejected a settlement that released damage claims for no compensation, despite the existence of injunctive relief.  There were two main Defendants in that case, Beneficial and H&R Block.  The settlement there provided injunctive relief against both Defendants to address future conduct.  *Id.* at 281 ("the defendants [ ] also agreed to injunctive relief in the form of certain required disclosures to future customers").  As in *Acosta*, however, the Seventh Circuit did not consider the injunctive relief for future conduct to be consideration to support the release of damage claims for past conduct:

> For this release of potentially substantial claims against H & R Block the settlement class received no consideration. In fact the settlement class received no consideration for the release of any claims against Block.

*Id.* at 283-284.

Regardless of the existence or strength of any claims class members may have against Defendants for restitution damages, class members are losing *something* by the release. Yet, they get absolutely *nothing* in return.  This complete lack of consideration renders this settlement unfair, unreasonable, and inadequate as a matter of law.

## D.  The injunctive relief is illusory

The injunctive relief in the settlement applies only to future sales and, as shown above, cannot support a release of the monetary damages claims for past sales.  In addition, the relief is illusory and does not even support the release of the class members' injunctive claims.

The alleged injunctive relief is on pages 4 – 5 of the Settlement Agreement.   The following chart analyzes each alleged "benefit" to the class members:

| Alleged benefit | Analysis |
|---|---|
| On November 2, 2009, Defendants changed the prescribing insert for 300 mg BP XL to remove certain references to the trade name Budeprion XL. This change shall be made permanent. | Defendants already made this change without the settlement for their own business reasons. This does not provide anything new to class members. |
| On February 10, 2011, Defendants changed the disclosure regarding USP (United States Pharmacopeia) testing from "pending" to "meets USP Dissolution Test 6." This change tells the public what USP test is used for the BP XL product so that any interested person may purchase the applicable test specifications from USP; this change shall be made permanent. | Defendants already made this change without the settlement for their own business reasons. This does not provide anything new to class members. |
| On or about January 24, 2011 Defendants recalled the 500 count bottle size of BP XL and are not selling the product in that manner at this time. If this product is sold in the future, Defendants agree it will be sold in accordance with CBE-O dated December 15, 2010 and submitted to the U.S. Food and Drug Administration (FDA), or any subsequent submission to the FDA that concerns the same subject matter and supersedes the December 2010 CBE-O. | Defendants are not selling this product, so there is no benefit to class members. Even if they begin selling it, they would be required to sell it in accordance with their FDA filing even in the absence of this settlement. Finally, Defendants are free to make a subsequent submission that eliminates the alleged benefits. |
| During the calendar years 2012 and 2013, Impax shall implement monitoring in an effort to ensure that its Standard Operating Procedures (SOPs) are followed regarding investigations of consumer complaints relating to BP XL. | This is meaningless. There is no requirement that Defendants *act* on what they find in the monitoring, nor is there any prohibition against changing their SOPs. Class members benefit from results, and this provision does not require any results that would benefit class members. |

| During the calendar years 2012 and 2013, Impax shall implement monitoring in an effort to comply with any then-current CAPA (Corrective Action/ Preventative Action) relating to BP XL) | As above, a requirement to monitor does not provide any benefits to class members because there is no requirement for how the Defendants must *act* in response to the results of their monitoring or to the benefit of consumers. |
|---|---|
| During the calendar years 2012 and 2013, Impax shall designate a senior quality and compliance officer to oversee the quality of BP XL. Twice a year during those two calendar years, the senior quality and compliance officer shall make a report to one or more members of the Board of Directors regarding quality and current Good Manufacturing Practice (cGMP) compliance. The Secretary of the Board shall thereafter certify by letter to the class counsel Allan Kanner that the senior quality and compliance officer has made the required report. | This too is meaningless. Designating an officer does not place any requirements on Defendants to *act* in response to class members. They can simply make a report, tell class counsel they made the report, and then completely ignore the report. |
| During calendar years 2012 and 2013, Impax shall post on its website any future voluntary recalls related to BP XL, to the extent such posting would be appropriate under FDA regulations. This posting shall include providing a link to any appropriate FDA website concerning the recall. | There is no evidence that Defendants will ever recall a product in those two years, so any alleged benefit here is purely speculative. In addition, posting recalls on Defendants' website is of no benefit; virtually no consumers will check that. Indeed, if the parties really felt that the Defendants' website was good for notice to class members, they would have provided notice of this settlement on that site, but did not. *See*, Doc. 182-4 p. 6. |

Thus, the alleged compensation for the release is illusory and is insufficient to support the waiver of class members' claims.

**E.  The amount of the requested attorneys' fees is evidence that the settlement is not fair, reasonable, or adequate.**

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement because the structure of the settlement – where all the cash goes to the attorneys even though Plaintiffs pled for restitution damages – is *per se* unfair, unreasonable, and inadequate.   The amount of the proposed attorneys' fees is an integral element in determining whether the settlement is fair, reasonable, and adequate:

> The court's settlement review should include provisions for the payment of Class Counsel. In class actions whose primary objective is to recover money damages, settlements may be negotiated on the basis of a lump sum that covers both class claims and attorney fees. Although there is no bar to such arrangements, the simultaneous negotiation of class relief and attorney fees creates a potential conflict ...   The judge can condition approval of the settlement on a separate review of the proposed attorneys' compensation.

MANUAL FOR COMPLEX LITIGATION 4th § 21.7, p. 335.   The fact that every penny the Defendants were willing to pay to settle the case will go to class counsel and their named-clients shows that the class representatives put their own self-interest before the interests of the class.

**F.  The settling parties have not met their burden of proof**

Objector objects to the settlement because the parties have failed to meet their burden to prove that the amount of the settlement is fair, reasonable, and adequate.  The burden of proof is on the settlement parties, not objectors:

> At the fairness hearing, the proponents of the settlement must show that the proposed settlement is 'fair, reasonable, and adequate.' [979]
>
> 979. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995));

MANUAL FOR COMPLEX LITIGATION 4th, §21.634, p. 322.

**IV. Objections to an Award of Attorneys' fees**

When class counsel seek to take for themselves the money the Defendant is willing to pay to settle a case, they become an adversary of the class and the district court becomes a fiduciary to protect the class:

> Because "the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must

14

assume the role of fiduciary for the class plaintiffs." As a fiduciary for the class, the district court must "act with 'a jealous regard to the rights of those who are interested in the fund' in determining what a proper fee award is."

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 994-995 (9th Cir. 2010)(citations omitted).

Objector and class members are harmed by the fee request in two ways. First, Defendant was willing to pay at least $4.5 million to settle the class claims, and that money could have gone to benefit class members if class counsel did not grab all of it for themselves. Second, Defendants will attempt to recoup the fee payment through the price for their product, so class members who purchase the product in the future will end up subsidizing the fee payment. And since the only alleged relief is only available if class members purchase Defendants' product in the future, class members are faced with either (1) not buying the product in the future and therefore receiving no benefit for the release of their claims, or (2) buying the product in the future and paying more to cover the costs of the attorneys' fees. Either way, class members lose and class counsel win.

Objector objects to fee request for the following reasons.

### A. The fee requested is grossly disproportional to the benefits, if any, obtained for the class

Class counsel earn a fee award by obtaining benefits for the class:

Compensating counsel for the actual benefits conferred on the class members is the basis for awarding attorney fees. The "fundamental focus is the result actually achieved for class members." That approach is premised on finding a tangible benefit actually obtained by the class members.

MANUAL FOR COMPLEX LITIGATION 4th § 21.71, p. 336. As shown above, there are virtually no tangible benefits obtained for the class in this settlement. Thus, only a minimal award, if any, is justified. And certainly not a seven figure fee.

Class counsel blame the miniscule relief obtained on the Supreme Court's opinion in *PLIVA, Inc. v. Mensing*, 131 S.Ct. 2567 (2011). But that is a red herring. The fee should be based on the actual benefits obtained for the class. If class counsel fail to obtain real benefits for the class, the reason is irrelevant. If they failed to obtain relief for absent class members, they are not entitled to a fee.

### B. The notice was defective

Regarding the application for attorneys' fees, Rule 23 provides:

Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

15

Fed. R. Civ. P. 23 (h)(1). At a minimum class counsel must disclose the amount they will be requesting in the class notice:

> In cases in which settlement approval is contemplated under Rule 23(e), notice of class counsel's fee motion should be combined with notice of the proposed settlement, and the provision regarding notice to the class is parallel to the requirements for notice under Rule 23(e).

Fed. R. Civ. P. 23(h)(1) committee note. As the Manual explains:

> If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses, *both amounts must be disclosed to the class*.

MANUAL FOR COMPLEX LITIGATION 4th § 21.7, p. 335 (emphasis added).

The class settlement notice did not inform class members of the amount of the fee request. Because class counsel did not give adequate notice to the class of the amount of fees they would request, the court should deny the motion for fees.

## V. Objections to Incentive Awards

Incentive awards are only permitted for the class representatives. The court appointed two class representatives, Micki Sackler and Andrew Richards. Doc. 183, p. 2. Yet, class counsel propose to award class members Harrell, Hicks, Krolikowski, Latvala, Leighty, Morgan, Ray, and Rosenfeld each a $5,000 incentive award despite the fact that they are not the class representatives. That request is improper and the court should deny the request.

Incentive awards are for *the class representatives*, not other class members. The cases cited by Plaintiffs in this request all dealt with incentive awards only to class representatives. *In re Heritage Bond Litigation*,No. 02 ML 1475, 2005 WL 1594403 at *4 (C.D. Cal. Jun. 10, 2005)("courts have availed themselves of the power to grant remuneration *to class representatives*.")(emphasis added); *Carroll v. Stettler*, No. 10-2262, 2011 WL 5008361 at *9 (E.D. Pa. Oct. 19, 2011)("Incentive awards *to class representatives* lie within the discretion of the trial court)(emphasis added); *Hall v. Best Buy Co., Inc*., 274 F.R.D. 154, 173 (E.D. Pa. 2011)("The Court has broad discretion to award payment *to class representatives* for their efforts to benefit the class.")(emphasis added). There is no basis for incentive awards to these other class members.

## VI. The right to object to the settlement

As a member of the class, Objector has the right to object:

> Any class member may object to the proposal if it requires court approval under this subdivision (e) … .

16

FED. R. CIV. P. 23 (e)(5);   *see also, Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002) (recognizing a class member's standing to object to a settlement because "[t]he legal rights he seeks to raise are his own, he belongs to a discrete class of interested parties, and his complaint clearly falls within the zone of interests of the requirement that a settlement be fair to all class members.").

Objectors and their counsel play an important role in the class action process.  There are four parties with a financial interest in a class action:  the named Plaintiff, the Defendant, class counsel and the absent class members.  Only three of those parties -- the named Plaintiff, the Defendant, and class counsel – participate in the settlement negotiations. The absent class members, by definition, do not participate.  The interests of the named Plaintiff are to increase his or her individual recovery through an incentive award that typically far exceeds the recovery of individual class members, as is the case here.  The interests of class counsel are to maximize the fees to class counsel.  The interests of the Defendant are to minimize the total amount paid out.  Thus, all three participating parties' interests are maximized by a settlement that is for a lower total amount but that shifts more of the settlement funds to class counsel and the named Plaintiff and away from absent class members.

Objectors are an important check on the process to ensure that the settlement does not benefit the named Plaintiff, the Defendant, and class counsel at the expense of the absent class members.  Courts have recognized the vital role objectors play in the class action process:

> Judge Posner has noted that "the absence of a real client impairs the incentive of the lawyer for the class to press the suit to a successful conclusion. His earnings from the suit are determined by the legal fee he receives rather than the size of the judgment. No one has an economic stake in the size of the judgment except the defendant, who has an interest in minimizing it. The lawyer for the class will be tempted to offer to settle with the defendant for a small judgment and a large legal fee, and such an offer will be attractive to the defendant, provided the sum of the two figures is less than the defendant's net expected loss from going to trial."

*General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 953 -954 (Tex. 1996)(quoting Richard A. Posner, AN ECONOMIC ANALYSIS OF LAW 570 (4th ed. 1992)).  Objectors, therefore play a critical role:

> While the parties to a class action start out in an adversarial posture, once they reach the settlement stage, incentives have shifted and there is the danger of collusion.  Class counsel, for instance, might settle claims for significantly less than they are worth, not because they think it is in the class's best interest, but instead because they are satisfied with the fees they will take away.

> Intervenors counteract any inherent objectionable tendencies by reintroducing an adversarial relationship into the settlement process and

> thereby improving the chances that a claim will be settled for its fair value. Intervenors have the potential to play this important role even in the numerous valid class actions where each plaintiff is seeking to be compensated only by a few dollars.

*Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003)(citations omitted). Similarly, the Third Circuit recognizes the importance of objectors:

> [A] lawyer with objector status plays a highly important role for the class and the court because he or she raises challenges free from the burden of conflicting baggage that Class Counsel carries. The objecting lawyer independently can monitor the proposed settlement, costs, and fees for Class Counsel and, thus, aid the court in arriving at a fair and just settlement for the members of the class who individually are largely unrepresented. … [A]s the distinguished historian, Allan Nevins, wrote many years ago, from the conflict of ideas comes crystallization of thought. Objections serve a highly useful vehicle for the members of the class and the public generally; they require consideration by the court and its disposition of them usually provides reassurance that the settlement and the fees approved are fair and just.

*In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 278 F.3d 175, 202 (3d Cir. 2002) (J. Rosenn, concurring and dissenting). The majority in that case went out of its way to expressly agree with that discussion. *Id.* at 193 ("nothing we say is intended to detract from the important role of objectors' counsel that Judge Rosenn so eloquently notes in his concurring/dissenting opinion.").

Objector's counsel, Weinstein Law, has successfully protected class members from unfair settlements. For instance, in *Kingsborough v. Sprint Communications Co., L.P. et al.*, Civil Action No. 07-10651-LTS, District of Massachusetts, Doc. 79, Weinstein Law objected to a settlement that would have granted easements to the Defendants on class members' property without class member's express consent. The objection was the sole objection to the court's jurisdiction. After preliminarily approving the settlement before the objection, the court agreed with the objection to jurisdiction, rejected the settlement, and refused to permit the easements against class members. *Kingsborough v. Sprint Communications Co., L.P.*, 673 F.Supp.2d 24, 28 (D. Mass., 2009). Thus, Weinstein Law's objection saved thousands of landowners across the country from being subjected to involuntary easements on their property.

Indeed, the *Kingsborough* case illustrates the importance of objectors. The court noted that a similar class settlement had been approved without jurisdiction because there was no objector that raised the issue:

> The court is aware that another court has approved a similar settlement in another nationwide class action suit against a different telecommunications company. *See Hinshaw v. AT & T Corp.*, 1998 WL 1799019 at *1 (Ind. Super. Aug. 24, 1998). The court understands that the

18

> AT & T settlement has a similar provision for recording easements by judgment of the court, as is proposed in this case. However, there is no indication that the court conducted an independent analysis of its jurisdiction. Nor did any person or entity object to the proposed settlement.

*Id.* at 35, n. 17. Thus, that case exemplifies the importance of objectors to the process and Weinstein Law's unique and important contribution.

In addition, Objectors can help the court identify an unfair settlement that needs to be disapproved. For instance, in *Edleson v. American Home Shield of Cal. Inc.,* Case No. 37-2007-00071725-CU-BT-CTL, in the San Diego Cal. Superior Court, Objector's counsel Weinstein Law objected to the unfair settlement as providing no real benefits to the class. After preliminarily approving the settlement before the objection, the court agreed with the objection and rejected the unfair settlement.

## VII.   Prayer

Regarding the proposed class settlement, the Court is limited to a single decision: approve or disapprove the settlement. *Evans v. Jeff D.*, 475 U.S. 717, 726-727 (1986). The Court may not amend the settlement. *Id.* Thus, Objector prays that the Court disapprove the settlement and deny the motion to certify.

If the Court nevertheless approves the settlement, Objector prays that the Court deny the requested fees to Class Counsel and the request for incentive awards.

Objector further prays that the Court grant Objector such other and further relief as to which Objector may be entitled

s/ Jeffrey L. Weinstein
Jeffrey L. Weinstein
State Bar No. 21096450
WEINSTEIN LAW
518 East Tyler Street
Athens, TX   75751
903/677-5333
903/677-3657 – facsimile

**ATTORNEYS FOR OBJECTOR**

**Certificate of Service**

This document has been filed electronically and is available for viewing and downloading from the ECF system. I further certify that a copy of the above and foregoing document has been served upon all counsel of record by electric mail by the Clerk of the Court via the CM/ECF system on May 11, 2012, additionally a courtesy copy was sent via US Mail to the following:

United States District Court
601 Market Street
Philadelphia, PA 19106

**Class Counsel:**
Allan Kanner
Kanner & Whiteley, LLC
701 Camp Street
New Orleans, LA 70130

**Defendants' Counsel:**
Asim Bhansali
Keker & Van Nest LLP
633 Battery Street
San Francisco, CA 94111

Jay P. Lefkowitz, P.C.
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022

s/ Jeffrey L. Weinstein
Jeffrey L. Weinstein

20