**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____    :
                                    :
IN RE: BUDEPRION XL                 :        **MDL No. 2107**
MARKETING & SALES LITIGATION        :
_____    :
                                    :
**THIS DOCUMENT APPLIES TO:**       :
**ALL ACTIONS**                     :        **09-md-2107**
_____    :

<u>**MEMORANDUM**</u>

**Schiller, J.**                                           **September 20, 2012**

This Court recently certified a settlement class and approved a settlement involving the generic version of the antidepressant Wellbutrin. The Court also approved Class counsel's request for attorneys' fees. Prior to the Court's approving the settlement, the Attorney General of Texas voiced some concerns to the Court about the settlement and now seeks to intervene for the purpose of appealing this Court's decision to approve the settlement. For the reasons that follow, the motion to intervene is denied.

**I.      BACKGROUND**

This litigation developed from numerous complaints filed in both federal and state courts throughout this country. It began in this District, on June 22, 2009, with the filing of _Rosenfeld v. Teva Pharmaceuticals, Inc._, Civ. A. No. 09-2811. Similar cases were filed in, or removed to, federal courts in the Central District of California, the Middle District of Florida, the Eastern District of Louisiana, the Eastern District of North Carolina, the Northern District of Texas, the Southern District of Ohio, the Southern District of Alabama, the Northern District of Oklahoma, and the Western District of Washington. In all of these cases, Plaintiffs sought to represent themselves and

a class of individuals who had taken Defendants Teva Pharmaceuticals USA and Impax Laboratories' generic version of Wellbutrin and whose conditions had worsened after switching to the drug. Both Plaintiffs and Defendants agreed that the cases should go to the United States Judicial Panel on Multidistrict Litigation ("MDL Panel") and be consolidated for pretrial purposes, although the parties disputed to which district the cases should be transferred. On December 2, 2009, the MDL Panel issued its decision and, pursuant to 28 U.S.C. § 1407, transferred the cases to this District.

Although this litigation began as a number of distinct cases brought throughout the country seeking to apply various state laws, Plaintiffs employed a different strategy once the MDL Panel transferred the litigation here. On March 1, 2010, Class representatives Micki Sackler and Andrew Richards filed an Administrative Class Action Complaint. As stated in the Administrative Class Action Complaint, "This lawsuit seeks to apply California's statutory business standards to a California drug manufacturer (Impax) and its distribution partner (Teva) for uniform national conduct emanating from California. Defendants engage in nationwide market activity, providing the same label with every Impax Product that omits material information. A national solution makes sense." (Admin. Class Action Compl. ¶¶ 99-100.)

The Administrative Class Action Complaint stated that the Class consisted of:

> All persons or entities in the United States who purchased, paid-for (in whole or in part), Bupropion Hydrochloride XL (150 mg) and/or Budeprion XL (300 mg) manufactured by Impax.
>
> Excluded from the Classes are Defendants, any parent, subsidiary or affiliate of Defendants, and their officers, directors, and employees, who are or have been employed by Defendants, and any judicial officer who may preside over this action.

(*Id*. ¶ 19.) Plaintiffs sued under California's Unfair Competition Law based on the omissions and

misrepresentations surrounding Defendants' products. Plaintiffs allege that Defendants engaged in a pattern of unfair business practices that has harmed consumers, physicians, pharmacies, and insurance companies. They further allege that Defendants' actions have harmed competitors in that they allowed Defendants to unfairly seize market share. Plaintiffs also brought a claim under the California Consumer Legal Remedies Act for Defendants' failure to disclose the differences between their products and Wellbutrin XL, including the decreased efficacy and increased risks associated with Defendants' products. Defendants filed a motion to dismiss on March 26, 2010, arguing federal law preempted Plaintiffs' claims, and following the denial of Defendants' motion, Defendants answered the Administrative Class Action Complaint and discovery commenced in earnest. Plaintiffs moved for class certification on January 31, 2011. On June 23, 2011, the Supreme Court decided *Pliva, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), which revived the preemption argument on which Defendants relied in their motion to dismiss. In September 2011, the parties filed cross-motions for summary judgment based on the preemption issue. On November 8, 2011, the parties participated in an 11-hour mediation session with the Hon. Diane M. Welsh (Ret.). With her continued help, the parties agreed to settle their dispute.

On February 1, 2012, following a hearing, the Court conditionally certified the Class and granted preliminary approval to the settlement agreement. (Order Preliminarily Approving Class Action Settlement, *In re Budeprion XL Mktg. & Sales Practices Litig.*, MDL No. 09-2107 (E.D. Pa. Feb. 1, 2012), ECF No. 183.) In accordance with the Court's directive, the parties sent out notice of the settlement to the Class. As outlined in this Court's Order preliminarily approving the settlement, objectors were required to file with the Court, no later than May 11, 2012, "a notice of the objector's intention to appear, submit[] documentary proof that the objector is a member of the Class, state[]

the basis for such objections, and serve[] copies of the foregoing and any other papers in support of

such objections upon counsel for the parties identified in the Notice so that such papers are actually

received by counsel for the parties by the date specified in the Notice." (*Id*.).

On May 9, 2012, the Court received a fax from the Office of the Attorney General of Texas,

entitled: "Objection to Final Approval of Settlement in *Budeprion XL Marketing and Sales Practices*

*Litigation*, MDL 2107 (lead case Cause No. 2:09-CV-2811); On behalf of approximately 182,376

affected Texas residents." (Texas Attorney General Letter, *In re Budeprion XL Mktg. & Sales*

*Practices Litig.*, MDL No. 09-2107 (E.D. Pa. May 25, 2012), ECF No. 193.) The objection seeks

to "alert the Court to several concerns about the adequacy of representation received by the class,

and the due process rights of absent class members." (*Id*.) The Attorney General of Texas requested

that the Court withhold approval until either Class members received money or a modification of

their release to ensure that the monetary claims by Class members were not extinguished by the

settlement. In an abundance of caution, the Court directed that the fax from the Attorney General of

Texas be placed on the docket. On May 11, 2012, Jaquelyn Anderson, a Texas resident represented

by an attorney, filed an objection to the settlement. The Court conducted a fairness hearing on May

25, 2012, in which the Court heard from Jeffrey Weinstein, who represents Anderson. Nobody from

the Attorney General of Texas's office was present at the fairness hearing.

On July 2, 2012, the Court issued an opinion granting class certification and final approval

of the settlement. On July 25, 2012, Anderson appealed the decision and on August 7, 2012, the

Attorney General of Texas filed the motion to intervene currently pending and a motion for extension

of time to file a notice of appeal. The motion for an extension of time was filed a day before the

Attorney General of Texas claimed the time period to appeal expired, and as a result he filed a notice

4

of appeal the day after he filed the motion for an extension of time. (State of Texas's Notice of Appeal, *In re Budeprion XL Mktg. & Sales Practices Litig.*, MDL No. 09-2107 (E.D. Pa. Aug. 8, 2012), ECF No. 207.)

## II.    DISCUSSION

Texas argues that it is entitled to intervene as of right and failing that, that this Court should grant its request for permissive intervention.

### A.    Intervention as of Right

Rule 24(a) of the Federal Rules of Civil Procedure states that "[o]n timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[1] Fed. R. Civ. P. 24(a). Under this rule, a would-be intervenor must demonstrate that: (1) the motion to intervene is timely; (2) the intervenor has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation. *Harris v. Pernsley*, 820 F.2d 592,

---

[1] Texas claims that it has the right to appeal without formally intervening because it registered a "valid, timely objection [to the settlement] before the district court." (Mot. to Intervene for the Purpose of Appeal [Mot. to Intervene] at 2.) The propriety of Texas's objection was not briefed and this Court will therefore not address it. The question whether a faxed letter to chambers from a State not party to a private class action settlement and seeking to "alert the Court to several concerns" qualifies as a valid, timely objection may therefore be addressed another day.

5

596 (3d Cir. 1987). The claimed interest in the litigation must be specific to the entity seeking to intervene, capable of definition, and directly affected in a substantially concrete fashion by the relief sought. *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998).

Texas argues that the Class Action Fairness Act ("CAFA"), specifically 28 U.S.C. § 1715, provides for intervention as of right in this case. (Mot. to Intervene at 3-6.) The relevant provisions of that statute require that defendants participating in a proposed class action settlement "serve upon the appropriate State official of each State in which a class member resides . . . a notice of the proposed settlement." 28 U.S.C. § 1715(b). Additionally, a final order of a proposed settlement "may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b)." 28 U.S.C. § 1715(d). Texas argues that it has a sufficient interest in the underlying litigation based on CAFA, which requires that states have "a right to notice and an opportunity to be heard with respect to class action settlements that affect their residents." (Mot. to Intervene at 4.)

Clearly, CAFA affords states a right to be notified of class action settlements. The statute says nothing, however, of granting states a right to be heard on, or formally appeal, every class action settlement simply because residents of that state are class members. Texas has no independent interest in this settlement reached between individuals prescribed a drug and the makers of that drug. Texas has not cited any case law that suggests that CAFA expanded the concept of standing such that a state could intervene as of right to appeal a settlement that does not involve the state. Furthermore, the very statute that Texas relies on also states that "[n]othing in this section shall be construed to expand the authority of, or impose any obligations, duties, or responsibilities upon, Federal or State officials." 28 U.S.C. § 1715(f). Thus, the Court rejects Texas's claim that CAFA, standing alone,

creates a right of intervention here.

Texas also points to its "interest in protecting its approximately 180,000 residents who are class members." (Mot. to Intervene at 5.) Texas is concerned that the lawyers in this case were awarded significant attorneys' fees while the Class members received only injunctive relief and released certain claims against Defendants. Of course Texas, as a state of the Union, has historically possessed, and has the power to act upon, its police powers, which exist to protect the health and safety of its citizens. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996); *see also Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2578 (2012) ("Our cases refer to this general power of governing, possessed by the States but not by the Federal Government, as the 'police power.'"). But Texas's police powers are not implicated by litigation in which some of its residents took prescription medication and, as a result, are participants in a settlement involving the efficacy of those medications.

Furthermore, Texas has not illuminated precisely what interests are at stake that were not protected by Class counsel here. Texas's desire to intervene in this litigation appears to be based on nothing more than the fact that some of the Class members are from Texas. But Texas fails to cite any support that such a tenuous connection provides a basis for intervention as a matter of right. "A mere general interest in the subject matter of the litigation is not enough to constitute a protectable interest under Rule 24(a). Rather, a proposed intervenor must demonstrate 'that there is a tangible threat to a legally cognizable interest.'" *Am. Farm Bureau Fed'n v. EPA*, 278 F.R.D. 98, 104 (M.D. Pa. 2011) (quoting *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995)). Finally, Anderson, who is a resident of Texas, formally objected to the settlement agreement, and has appealed this Court's rejection of her objections. While Texas offers

7

the purely speculative comment that Anderson may not see her appeal through to its conclusion, Texas provides no reason why Anderson's presence in this matter fails to accomplish Texas's objective. This is particularly so because Anderson's objections are similar to those raised by Texas. Indeed, they go well beyond those voiced by Texas. The Court rejects Texas's arguments that it may intervene as a matter of right.

### B.      Permissive Intervention

Rule 24(b) of the Federal Rules of Civil Procedure allows for a permissive intervention, "[o]n timely motion" if a federal law gives a "conditional right to intervene" or if the putative intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(A) & (1)(B). Whether to allow permissive intervention is left to the discretion of the trial court with the burden resting on the entity seeking to intervene. *See Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 1982).

The individual class members did not retain the Office of the State Attorney General of Texas to conduct this litigation and, from the Court's review of its fax to this Court and the motion to intervene, Texas has failed to assert any right on behalf of its residents or raise any objections not currently being adjudicated. Texas's argument that permissive intervention is warranted because it disagrees with the settlement is not a "claim or defense that shares with the main action a common question of law or fact." As stated previously, Texas has no independent claim in this action. The state did not take Defendants' product—some of those living within its borders did.

Finally, Texas's conduct in objecting to the settlement here is curious. It faxed a letter to the Court offering its suggestion for improving the settlement rather than file a formal objection. Texas also failed to send a representative to raise any objections at the fairness hearing this Court

8

conducted. Instead, Texas sought to intervene by filing the instant motion—which according to Texas was unnecessary—mere hours before its time to appeal expired, along with a motion to extend the time in which it could file an appeal. Texas, consistent with its argument that formal intervention was unnecessary, then went ahead and appealed this Court's Order granting final approval of the settlement. According to its motion to intervene Texas received notice that the parties reached a settlement on or about February 10, 2012. (Mot. to Intervene at 2.) It is unclear to the Court why Texas did not seek to intervene prior to the commencement of Anderson's appeal. Furthermore, intervention is unnecessary given that the Third Circuit is already expected to address the propriety of the Court's decision to grant class certification, approve the terms of the settlement, and award attorneys' fees. Texas is now just adding another issue to the appeal. As Texas has not offered a legitimate basis for permissive intervention, the Court sees no need to grant Texas such permission.

III.    **CONCLUSION**

Texas has failed to demonstrate that it may intervene as of right pursuant to Federal Rule of Civil Procedure 24(a) and this Court exercises it discretion to deny permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). Texas's motion to intervene is therefore denied. An Order consistent with this Memorandum will be docketed separately.